## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

JACQUELINE L. FITZGERALD,

      Plaintiff,

v.                              Case No. 3:22-cv-1053-MMH-PDB

MERCEDES-BENZ FINANCIAL
SERVICES USA, LLC and ICU
RECOVERY,

      Defendants.

_____

## <u>O R D E R</u>

**THIS CAUSE** is before the Court on the parties' cross-motions for summary judgment, <u>see</u> Defendants' Joint Motion for Summary Judgment and Accompanying Memorandum of Law (Doc. 75; Defendants' Motion), filed January 19, 2024; Plaintiff's Motion for Summary Judgment (Doc. 78; Fitzgerald's Motion), filed January 19, 2024 (collectively, "Motions"), and the respective responses, <u>see</u> Plaintiff's Opposition to Defendants' Joint Motion for Summary Judgment (Doc. 81; Fitzgerald's Response), filed February 9, 2024; Defendants' Joint Response in Opposition to Plaintiff's Motion for Summary Judgment and Accompanying Memorandum of Law (Doc. 79; Defendants' Response), filed February 9, 2024.  The parties have each filed a reply.  <u>See</u> Defendants' Joint Reply to Plaintiff's Opposition to Motion for Summary

Judgment and Memorandum of Law (Doc. 82; Defendants' Reply), filed February 23, 2024; Plaintiff's Reply to Defendants' Joint Reply [sic] to Plaintiff's Opposition to Motion for Summary Judgment and Memorandum of Law (Doc. 85; Fitzgerald's Reply), filed March 20, 2024.[1]   As such, the Motions are ripe for review.

## I.   Procedural History

Proceeding pro se, Plaintiff Jacqueline L. Fitzgerald initiated this action on September 27, 2022, by filing Plaintiff's Original Complaint (Doc. 1; Complaint) against Defendants Mercedes-Benz Financial Services USA LLC (MBFS) and ICU Recovery, Inc. (ICU).   See generally Complaint.   On November 1, 2022, the Honorable Patricia D. Barksdale, United States Magistrate Judge, determined that the Complaint violated the Eleventh Circuit Court of Appeals' prohibition on shotgun pleadings and directed Fitzgerald to file an amended complaint on or before November 22, 2022.   See Order (Doc. 3) at 4, entered November 1, 2022.   Fitzgerald timely filed Plaintiff's Amended Complaint (Doc. 4; Amended Complaint), which is the operative complaint in this action.   MBFS filed an answer to the Amended Complaint and also

---

[1] The title of this document suggests that it is a sur-reply to Defendants' Reply, and in the body of the document Plaintiff confusingly asserts that it is a "reply to Defendants' . . . Opposition to Defendants' Motion for Summary Judgment."   See Fitzgerald's Reply at 1.   However, Plaintiff concludes this document by requesting that the Court grant "summary judgment in her favor and against the Defendants."   See id. at 8.   Accordingly, the Court construes this document as a reply to Defendants' Response.

asserted a counterclaim against Fitzgerald.  <u>See</u> Defendant Mercedes-Benz Financial Services USA LLC's Answer and Affirmative Defenses to Plaintiff's Complaint and Counterclaim (Doc. 7; MBFS Answer) at 44–49, filed December 19, 2022; Mercedes-Benz Financial Services USA, LLC Counterclaim (Doc. 7; Counterclaim).   ICU has also answered the Amended Complaint.   <u>See</u> Defendant ICU Recovery Inc.'s Answer and Affirmative Defenses to Plaintiff's Complaint (Doc. 70; ICU's Answer).   Defendants now move for summary judgment in their favor as to each of Fitzgerald's claims.   <u>See generally</u> Defendants' Motion.   MBFS also moves for summary judgment in its favor as to its Counterclaim against Fitzgerald.  <u>Id.</u> at 18–20.  Fitzgerald moves for summary judgment in her own favor as to the claims she brings against both Defendants, and as to MBFS's Counterclaim.   <u>See generally</u> Fitzgerald's Motion.

## II.     Legal Standard

Under Rule 56, Federal Rules of Civil Procedure (Rule(s)), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Rule 56(a).  The record to be considered on a motion for summary judgment may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other

materials." Rule 56(c)(1)(A).[2]  An issue is genuine when the evidence is such that a reasonable jury could return a verdict in favor of the nonmovant.  See Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (quoting Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 919 (11th Cir. 1993)).  "[A] mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment."  Kesinger ex rel. Est. of Kesinger v. Herrington, 381 F.3d 1243, 1247 (11th Cir. 2004) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

The party seeking summary judgment bears the initial burden of demonstrating to the Court, by reference to the record, that there are no genuine issues of material fact to be determined at trial.  See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).  "When a moving party has discharged its burden, the non-moving party must then go beyond the

---

[2] Rule 56 was revised in 2010 "to improve the procedures for presenting and deciding summary-judgment motions." Rule 56 Advisory Committee's Note 2010 Amends.

> The standard for granting summary judgment remains unchanged. The language of subdivision (a) continues to require that there be no genuine dispute as to any material fact and that the movant be entitled to judgment as a matter of law. The amendments will not affect continuing development of the decisional law construing and applying these phrases.

Id.  "[A]lthough the interpretations in the advisory committee['s] notes are not binding, they are highly persuasive."  Campbell v. Shinseki, 546 Fed. Appx. 874, 879 n.3 (11th Cir. 2013). Thus, case law construing the former Rule 56 standard of review remains viable and applies here.

In citing to Campbell, the Court notes that "[a]lthough an unpublished opinion is not binding . . . , it is persuasive authority."  United States v. Futrell, 209 F.3d 1286, 1289 (11th Cir. 2000) (per curiam); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36–2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593–94 (11th Cir. 1995) (citations and quotation marks omitted). Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; see also McCormick v. City of Ft. Lauderdale, 333 F.3d 1234, 1243 (11th Cir. 2003) ("The mere existence of some factual dispute will not defeat summary judgment unless the factual dispute is material to an issue affecting the outcome of the case."). In determining whether summary judgment is appropriate, a court "must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." Haves v. City of Miami, 52 F.3d 918, 921 (11th Cir. 1995) (citing Dibrell Bros. Int'l, S.A. v. Banca Nazionale Del Lavoro, 38 F.3d 1571, 1578 (11th Cir. 1994)). Notably, the instant action is before the Court on cross-motions seeking summary judgment. "The principles governing summary judgment do not change when the parties file cross-motions for summary judgment." T-Mobile S. LLC v. City of Jacksonville, Fla., 564 F. Supp. 2d 1337, 1340 (M.D. Fla. 2008).[3] Instead,

---

[3] The Court notes that although decisions of other district courts are not binding, they may be cited as persuasive authority. See Stone v. First Union Corp., 371 F.3d 1305, 1310

applying the same principles, "the Court must determine whether either of the parties deserves judgment as a matter of law on the undisputed facts." Id.

Of course, "pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998). However, "a pro se litigant does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a fact material to [her] case in order to avert summary judgment." Brown v. Crawford, 906 F.2d 667, 670 (11th Cir. 1990). Although courts show leniency to pro se litigants, courts "will not serve as de facto counsel or 'rewrite an otherwise deficient pleading in order to sustain an action.'" Nalls v. Coleman Low Fed. Inst., 307 F. App'x 296, 298 (11th Cir. 2009) (quoting GJR Invs., Inc. v. Cnty. of Escambia, 132 F.3d 1359, 1369 (11th Cir. 1998)).

## III.   Background

Each claim in this action relates to an agreement by which Fitzgerald leased an SUV from Mercedes-Benz of Orange Park on January 11, 2020. See generally Amended Complaint; Counterclaim; see also Deposition Transcript of Jacqueline L. Fitzgerald (Doc. 74-1; Fitzgerald's Deposition) at 60–70. [4]

---

(11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects").

[4] The lease agreement is attached to the transcript of Fitzgerald's Deposition. There are multiple copies of the lease agreement in the record: Fitzgerald has also submitted the lease agreement twice, each time with annotations. See Doc. 1-9 (attachment to the

Mercedes-Benz of Orange Park assigned the lease to Daimler Trust, and the Lease Agreement names MBFS as the servicing agent with authority to enforce the lease.[5]   See Lease Agreement at 9.   While Fitzgerald initially "did agree to the terms of the lease agreement," she came to believe that "the lease was fraudulent."   Fitzgerald's Deposition at 36.   Based on this belief, she stopped making payments towards the lease in May 2022 because she "didn't feel as if [she] owed [the] balance."   See id. at 20–21.   After Fitzgerald defaulted on the lease, MBFS gave Fitzgerald until July 11, 2022, to cure the default.   See id. at 78 (notifying Fitzgerald of MBFS's intent to repossess the SUV if she did not cure the default by this date).   When Fitzgerald did not cure her default, MBFS directed ICU to repossess the SUV, and ICU did so on July 28, 2022.   See id. at 28–29; Fitzgerald's Motion at 7 (attaching an exhibit titled Order to Repossess).   After repossessing the SUV, MBFS represents that it "sold the vehicle at a private sale and applied the proceeds to the outstanding debt" to mitigate its damages.   Defendants' Motion at 3.

---

Complaint with handwritten annotations); Doc. 81-1 at 10–14 (attachment to Fitzgerald's Response with added highlights).   For ease of reference, the Court will cite the version attached to Fitzgerald's Deposition as the Lease Agreement, and will refer to the Lease Agreement by its internal page numbers.

[5] Although MBFS was not a signatory to the Lease Agreement, pursuant to the terms of the Lease Agreement, MBFS, as Daimler Trust's assignee, has "the power to act on Daimler Trust's behalf to administer, enforce and defend [the] lease."   See Lease Agreement at 9; see also Spa Creek Servs., LLC v. S.W. Cole, Inc., 239 So. 3d 730 (Fla. 5th DCA 2017) ("'[C]hoses in action arising out of a contract are assignable and may be sued upon and recovered by the assignee in his own name and right.'" (quoting Spears v. W. Coast Builders' Supply Co., 133 So. 97, 98 (Fla. 1931)).

In her Amended Complaint, Fitzgerald asserts several claims against both MBFS and ICU.  While she does not number these claims as separate counts, the Court will do so for clarity and ease of reference.  In Count I, Fitzgerald raises a claim of fraud against both MBFS and ICU on the basis that "[n]o valid contract exists between" her and either of these Defendants.  <u>See</u> Amended Complaint ¶ 21.  In Count II, Fitzgerald asserts that both Defendants violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 <u>et seq.</u> (FDCPA) under a number of theories.  <u>See id.</u> ¶¶ 22–50.  In Count III, she asserts that MBFS unlawfully discriminated against her in violation of the Equal Credit Opportunity Act, 15 U.S.C. § 1691 (ECOA).  <u>See id.</u> ¶¶ 51–52.  In Count IV, she raises a claim against MBFS for violation of the Truth in Lending Act, 15 U.S.C. § 1602 (TILA).  <u>See id.</u> ¶¶ 53–63.  In Counts V and VI, Fitzgerald asserts claims against ICU for trespass and conversion, respectively, for taking possession of the SUV.  <u>See id.</u> ¶¶ 64–71.  Finally, in Count VII, Fitzgerald brings a claim of unjust enrichment against MBFS[6] for "unlawfully billing [her] for payments" and "[t]aking away the vehicle that [she] has been paying for."[7]  <u>See id.</u> ¶¶ 72–75.  Fitzgerald seeks a wide variety of relief,

---

[6] Defendants appear to have interpreted Count VII as a claim against both MBFS and ICU.  <u>See</u> Defendants' Motion at 17 (arguing that there is no evidence to support a claim that ICU was unjustly enriched); <u>see also</u> Amended Complaint ¶ 74 (asserting generally that "[t]aking away the vehicle that Plaintiff has been paying for also amounts to unjust enrichment").  However, Fitzgerald specifically pleaded that "<u>Mercedes-Benz</u> is liable for unjust enrichment."  <u>See</u> Amended Complaint ¶ 75 (emphasis added).

[7] Fitzgerald also includes several allegations under the heading "Affidavits as Truth

including statutory damages, punitive damages, a refund of all payments she made to MBFS, and an order "compelling Mercedes-Benz" to send Fitzgerald "all documents needed to transfer title to her." See id. at 17.

In addition to filing its Answer to the Amended Complaint, MBFS asserts a Counterclaim for breach of contract against Fitzgerald for breaching the Lease Agreement. See Counterclaim. Specifically, MBFS seeks damages in the amount of $8,279.09, plus interest, costs, and attorney's fees. See id. at 47. MBFS and ICU now move for summary judgment as to each claim in Fitzgerald's Amended Complaint. See generally Defendants' Motion. In addition, MBFS seeks the entry of summary judgment in its favor as to its Counterclaim. See id. at 18–19. For her part, Fitzgerald seeks the entry of summary judgment in her favor on her own claims and against MBFS on its Counterclaim. See generally Fitzgerald's Motion.

## IV.   Summary of the Arguments

In Defendants' Motion, both Defendants argue that they are entitled to summary judgment in their favor on Fitzgerald's claims because Fitzgerald

---

in Commerce." See Amended Complaint at 15. Under this heading, she asserts that she submitted unrebutted affidavits to Defendants which were a "solemn expression of Plaintiff's truth," and argues that "this Court should take the contents of the affidavits . . . as true" because "Defendants failed to rebut the affidavits . . . with point-by-point rebuttal affidavits." See id. ¶¶ 78, 84. Although Fitzgerald references the Uniform Commercial Code, she does not appear to assert any new cause of action in this section. Instead, Fitzgerald presents arguments about the legal standard the Court should use in reviewing the evidence. To the extent that Fitzgerald seeks to assert a separate claim for "Affidavits as Truth in Commerce," the law recognizes no such cause of action. The Court therefore does not address this section in identifying Fitzgerald's claims.

defaulted on her monthly payments, MBFS properly exercised its rights under the Lease Agreement, and ICU lawfully repossessed the SUV on MBFS's behalf. See Defendants' Motion at 2–3.   More specifically, Defendants assert that they are entitled to summary judgment on Fitzgerald's claim for fraud in Count I because she admits that she agreed to the terms of the contract, and the record does not support an inference that any aspect of the agreement was fraudulent. See id. at 7–8.   As to Fitzgerald's claims under the FDCPA in Count II, Defendants argue that neither MBFS nor ICU are debt collectors as defined in that statute.   See id. at 10.   And MBFS argues that it is entitled to summary judgment as to Fitzgerald's ECOA and TILA claims in Counts III and IV because there is no evidence that she applied for credit, was denied credit, or was treated differently from any other individual, and because the Lease Agreement includes all disclosures required by law.   See id. at 11–12.   ICU asserts that it is entitled to summary judgment on the claims for trespass and conversion in Counts V and VI because Fitzgerald consented to MBFS's repossession of the vehicle when she signed the Lease Agreement, and therefore ICU, as MBFS's agent, "had the right to take possession of the" SUV in accordance with Florida law.   See id. at 14.   MBFS also contends that Fitzgerald's claim for unjust enrichment in Count V fails as a matter of law because, under Florida law, such a claim "'cannot apply where an express contract exists which allows the recovery.'"   See id. at 16 (quoting Degutis v.

Fin. Freedom, LLC, 978 F. Supp. 2d 1243, 1265 (M.D. Fla. 2013)).   Finally, MBFS argues that it is entitled to summary judgment in its favor as to its Counterclaim for breach of contract because Fitzgerald admits that she freely executed the Lease Agreement, and both parties performed under the contract until Fitzgerald defaulted on her monthly payments.   See id. at 19.   Pursuant to the terms of the Lease Agreement, MBFS contends that it is entitled to "the outstanding balance of $8,279.09, together with its pre-judgment interest, costs, and attorneys' fees."   Id.

Fitzgerald raises several arguments in opposition to Defendants' Motion (and in support of her own), most of which are based on her contention that the Lease Agreement was fraudulent, illegal, or otherwise invalid, and that MBFS and ICU therefore had no lawful basis to repossess the SUV or bill her under the lease.   Among other arguments, she contends that "[t]he lease agreement was not properly signed."   See Fitzgerald's Response at 1.   She also argues that MBFS was merely the servicer for her lease, and therefore did not have a security interest in the SUV.   See id. at 2, 6.   And relying on a 2016 preliminary prospectus which she attaches to her motion, Fitzgerald asserts that "MBFS failed to disclose that" it made her 2020 "application a negotiable instrument and securitized it," and that MBFS "engaged in securities fraud by securitizing [her] application and selling it."   See id. at 2; Fitzgerald's Motion at 2.   Fitzgerald further contends that "MBFS was not licensed to collect debt

in the State of Florida," that it "sent extortionate letters of collection for payment," that it "admits to selling the vehicle at private sale," and that it violated the "Equal Credit Opportunity Act by refusing to allow [her] credit as requested to resolve the alleged balance owed prior to unlawful possession." See Fitzgerald's Motion at 2–3, 7.

## V. Discussion

As an initial matter, Fitzgerald asserts in her various filings that Defendants violated a number of statutes and regulations based on facts which she did not plead in her Amended Complaint.   See Fitzgerald's Response at 1 (asserting that the Lease Agreement was not signed in accordance with 48 C.F.R. § 552.270); Fitzgerald's Response at 3 (asserting that MBFS is "not licensed to collect debt in the State of Florida"); Fitzgerald's Response at 7 (contending that MBFS violated 15 U.S.C. § 1666d and Securities Exchange Rule 10b-5); see also Fitzgerald's Reply at 5 (citing 15 U.S.C. § 1); Fitzgerald's Reply at 6.   And while Fitzgerald pleaded Count I as a claim of "Fraud" based on the allegation that "[n]o valid contract exists between the Plaintiff and Defendants," see Amended Complaint at 4, in Fitzgerald's Motion she attempts to re-cast this as a claim for securities fraud based on allegations which she did not plead in her Amended Complaint.   See Fitzgerald's Motion at 1–2 (describing her causes of action as including "Fraud (Securities)" and asserting that MBFS "did not abide by the Securities Exchange act of 1934").   To the

extent that Fitzgerald is attempting to assert new claims for violations of these statutes or regulations (or recast existing claims as claims under these provisions), such claims are not properly before the Court and the Court does not consider them.[8]   See Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment."); Ivey v. First Quality Retail Serv., 490 F. App'x 281, 287 (11th Cir. 2012) (holding that a "district court properly declined to address" a pro se plaintiff's claim because "she did not include the claim in her complaint").

Before addressing the merits of Fitzgerald's claims, the Court notes that many of Fitzgerald's arguments are similar to those espoused by so-called "sovereign citizens."   For example, Fitzgerald states that her social security number is the "property of the JACQUELINE LORRAINE FITZGERALD Revocable Living Trust."   See Fitzgerald's Response at 2; see also Fitzgerald's Deposition at 39 (stating that she is "the implied surety for -- for the name Jacqueline -- the all capital name, Jacqueline Lorraine Fitzgerald").[9]   She also

_____

[8] The Court notes, however, that Fitzgerald largely misunderstands the authority she cites.   For example, she argues that MBFS has no right to collect the outstanding balance because, under 15 U.S.C. § 1666d, "[w]henever a credit balance is in excess of $1, the amount should be refunded to the consumer."   See Amended Complaint ¶ 12.   Fitzgerald appears to believe that under this statute Defendants actually "[o]we [her] the amount of $8,279.09," i.e., the unpaid balance of her account.   See Fitzgerald's Reply at 7.   But this statute applies to balances owed by creditors to debtors, such as when a debtor transmits "funds to a creditor in excess of the total balance due on an account."   See 15 U.S.C. § 1666d.   It does not require MBFS to pay Fitzgerald the amount of her own unpaid balance.

[9] As many courts have noted, sovereign citizens often attempt to argue that an

- 13 -

contends that "[a]nything that is purchased using [a social security number] is an obligation of the United States." Fitzgerald's Response at 2. And in her deposition, she explained her belief that, "based on [her] understanding of the law [she] was reading at the time" she stopped making payments, her signature on the lease and use of her social security card meant that "signing the lease agreement was the payment" and MBFS had no authority to make additional charges to her account. See Fitzgerald's Deposition at 17. Likewise, Fitzgerald cites the Uniform Commercial Code and asserts that "affidavits" she sent to Defendants "constitute Plaintiff's solemn expression of Plaintiff's truth," and that "[b]y failing to rebut or deny the contents of the affidavits . . . Defendants admitted the contents." See Amended Complaint ¶¶ 76, 78. While Fitzgerald does not label herself as a sovereign citizen in her filings, her arguments bear all the hallmarks of sovereign citizen ideology. See El v. AmeriCredit Fin'l Servs., Inc., 710 F.3d 748, 750 (7th Cir. 2013) (explaining the sovereign citizen belief that the United States government uses "American citizens as collateral," and that this permits them to charge "their debt to the Treasury Department" (internal quotation omitted)); United States v. Weldon, No. 1:08-cv-01643-JLO-SMS, 2010 WL 1797529, at *2–3 (E.D. Cal.

_____

individual's name denotes a fictitious entity when it is spelled with all capital letters. See Lebron v. BMW Fin'l Servs., No. 6:21-cv-958-DCI, 2021 WL 9594003, at *2–3 (M.D. Fla. Dec. 13, 2021) (collecting cases).

May 4, 2010) (explaining the "tax protester theory" that each taxpayer is a "creditor of the United States" who is "entitled to funds held in an account" identified by "name or social security number," and rejecting this theory as "without merit"); Santiago v. Century 21/PHH Mortg., No. 1:12-cv-02792-KOB, 2013 WL 1281776, at *1 n.3 (N.D. Ala. Mar. 27, 2013) (concluding that the plaintiffs "appear[ed] to be aligned with the 'sovereign citizen' movement" based on their "use of 'affidavits' and other pseudo-legal documents that purport to require responses within a specified time or face 'legal consequences' of the author's own making"); Young v. PNC Bank, N.A., No. 3:16cv298/RV/EMT, 2018 WL 1251920, at *2 n.1 (N.D. Fla. Mar. 12, 2018) (rejecting a plaintiff's attempts "to extinguish a lawful and legitimate debt under a bizarre legal theory," and noting that "sovereign citizens often file lots of rambling, verbose pleadings that, inter alia, rely heavily on the Uniform Commercial Code" (internal quotations omitted)).   These arguments are frivolous, and the Court need not address them further.   See United States v. Sterling, 738 F.3d 228, 233 n.1 (11th Cir. 2013) (noting that courts "have summarily rejected [sovereign citizen] legal theories as frivolous").

Because the majority of Fitzgerald's claims—along with MBFS's Counterclaim—depend on the validity of the Lease Agreement, the Court begins by analyzing Fitzgerald's arguments in support of her contention that the lease is invalid.   The Court then turns to the elements of each of

Fitzgerald's claims.   Finally, the Court addresses MBFS's Counterclaim, in which it asserts that it is entitled to summary judgment because the undisputed evidence shows that Fitzgerald breached the terms of the Lease Agreement.

## A. The Lease Agreement

As discussed above, Fitzgerald contends that the Lease Agreement was fraudulent or otherwise invalid.[10]   But she concedes that she initialed and signed the Lease Agreement, and that, at the time she did so, she "did agree to the terms of the lease agreement."   See Fitzgerald's Deposition at 36.   She also agrees that she received the SUV in exchange for her agreement to make monthly payments as specified in the Lease Agreement.   See id.   Fitzgerald does not dispute that both parties performed under the Lease Agreement until she defaulted, that MBFS sent her a notice of default, that she failed to cure the default, or that she remained in default when Defendants repossessed the SUV. See id. at 24, 27, 31.   Nonetheless, she maintains that the Lease Agreement is invalid for several reasons.

---

[10] The Court notes that Fitzgerald's imprecise and scattershot theories of fraud do not satisfy Rule 9(b), which requires a plaintiff asserting a claim of fraud to "state with particularity the circumstances constituting fraud" by alleging "(1) the precise statements, documents, or misrepresentations made; (2) the time, place and person responsible for the statement; (3) the content and manner in which these statements misled [her]; and (4) what the defendants gained by the alleged fraud."   See Wilding v. DNC Servs. Corp., 941 F.3d 1116, 1127–28 (11th Cir. 2019) (internal quotation marks omitted) (quoting Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1291 (11th Cir. 2010)).   However, Defendants did not seek dismissal of the Amended Complaint on this basis.

Each of Fitzgerald's arguments that the lease is invalid is unavailing.   In asserting that "the lease agreement was not properly signed," she relies on 48 C.F.R. § 552.270-3.   <u>See</u> Fitzgerald's Response at 1.   However, this provision is part of the General Services Administration Acquisition Regulation System, which "control[s] the relationship between [the General Services Administration] and contractors and prospective contractors."   <u>See</u> 48 C.F.R. § 501.101.   Fitzgerald provides no authority to suggest that it applies to the Lease Agreement, which according to its terms is "subject to the laws of the state where it was signed"—i.e., Florida.   <u>See</u> Lease Agreement at 9. Fitzgerald also appears to contend that the Lease Agreement is invalid because the lessor's signature "just says J, and that doesn't say Mercedes Benz of Orange Park."[11]   <u>See</u> <u>id.</u> at 37.   But other than the inapplicable regulation discussed above, Fitzgerald provides no authority to support her belief that this renders the contract invalid. [12]   And while Fitzgerald asserts that "[a]n employee cannot legally bind a company," and argues that there could have been "no meeting of the minds" because "Mercedes-Benz of Orange Park has no

---

[11] Mercedes-Benz of Orange Park is referred to as the "Lessor" throughout the Lease Agreement, including in the signature block.   <u>See, e.g.</u>, Lease Agreement at 1 (defining the "Lessor (Dealer)" as "Mercedes-Benz of Orange Park"); Lease Agreement at 6 ("By signing below, the Lessor accepts the terms and conditions of this lease . . . .").

[12] Even if Fitzgerald could show that Mercedes-Benz of Orange Park did not properly sign the Lease Agreement, Fitzgerald acknowledges that she made monthly payments under the contract and received possession of the SUV in exchange.   <u>See</u> Fitzgerald's Deposition at 34.   And under Florida law "[a] contract is binding, despite the fact that one party did not sign the contract, where both parties have performed under the contract."   <u>Integrated Health Servs. of Green Briar, Inc. v. Lopez-Silvero</u>, 827 So. 2d 338, 339 (Fla. 3d DCA 2002).

brain and cannot speak," <u>see</u> Fitzgerald's Reply at 3–4, she is plainly mistaken.[13]   <u>See, e.g.</u>, Restatement (Third) of Agency § 6.01 cmt. a (Am. Law. Inst. 2024) (stating "the basic principle that when an agent enters into a contract on behalf of a disclosed principal, the principal and the third party are parties to the contract").   Indeed, "[i]t is axiomatic that a corporation . . . cannot act other than through its officers, employees, and agents."   <u>United Techs. Corp. v. Mazer</u>, 556 F.3d 1260, 1271 (11th Cir. 2009).

Fitzgerald also contends that the Lease Agreement is invalid because MBFS "intentionally withheld" that it "made the application negotiable and securitized it."   <u>See</u> Fitzgerald's Response at 5.   But her only evidence of this purported securitization is a prospectus from 2016—four years before she signed the Lease Agreement.   <u>See</u> Fitzgerald's Motion at 14 (attaching the prospectus, which is "DATED MARCH 3, 2016").   She does not provide any basis to conclude that MBFS sold the Lease Agreement in an asset-backed securitization transaction, nor does she rebut the sworn declaration of Tracy McLane, in which McLane attests that Fitzgerald's Lease Agreement "was never part of an [asset-backed securitization] transaction."   <u>See</u> Declaration in Support of Defendants' Joint Response in Opposition to Plaintiff's Motion for

---

[13] Fitzgerald implicitly recognizes this in asserting that MBFS "sold the alleged debt to a debt buyer," an act that would be impossible if corporations could not enter binding agreements through their employees.   And Fitzgerald does not contend that Mercedes-Benz of Orange Park did not authorize its employee to sign the Lease Agreement on its behalf.

Summary Judgment (Doc. 79-1; McLane Declaration).[14]   Construing the facts

and drawing all reasonable inferences in the light most favorable to Fitzgerald,

the arguments she asserts do not support even an inference that the Lease

Agreement was invalid.   As such, for purposes of resolving the Motions, the

Court determines that the Lease Agreement is a valid contract.

## B. Fitzgerald's Causes of Action

### 1. Fraud

The Court now turns to each of Fitzgerald's causes of action.   In Count I,

Fitzgerald asserts a claim of fraud based on her contention that "no valid

contract exists between" herself and either Defendant.   See Amended

Complaint ¶ 21.   "The four essential elements of fraud under Florida law are:

---

[14] In Fitzgerald's Reply, she asserts that the McLane Declaration is inadmissible hearsay, states that McLane "was not made available for deposition under oath . . . during discovery," and that the "deadline for disclosing expert reports . . . has expired."   See Fitzgerald's Reply at 2.   Fitzgerald does not provide a basis for her assertion that the affidavit is hearsay, but even if it were, "a district court may consider a hearsay statement in passing on a motion for summary judgment if the statement could be reduced to admissible evidence at trial or reduced to admissible form."   Jones v. UPS Ground Freight, 683 F.3d 1283, 1293–94 (11th Cir. 2012) (internal quotation omitted).   And because McLane provides only fact testimony in the declaration, not expert testimony, Fitzgerald's reliance on the rules governing expert witnesses is unpersuasive.   See Rule 26(a)(2)(B) (governing the witnesses who must provide written expert reports); see also Travelers Prop. Cas. Co. of Am. v. Ocean Reef Charters LLC, 71 F.4th 894, 906 (11th Cir. 2023) (explaining that the ability to answer hypothetical questions is the essential difference between expert and lay witnesses).   While Fitzgerald may personally disbelieve the testimony in the McLane Declaration, she offers no contradictory evidence to show that there is a genuine factual dispute for trial.   See Terrell v. Sec'y, Dep't of Veteran Affs., 98 F.4th 1343, 1351 (11th Cir. 2024) ("Contentions based on mere speculation and conjecture cannot defeat summary judgment." (internal quotation omitted)).   And although Fitzgerald notes that McLane was not deposed, she does not identify any violation of Defendants' discovery obligations.   As such, her objections to McLane's Declaration are unavailing.

'(1) a false statement [or an omission] concerning a specific material fact; (2) the maker's knowledge that the representation is false; (3) an intention that the representation induces another's reliance; and (4) consequent injury by the other party acting in reliance on the representation.'"[15]   <u>Hepp v. Paul Revere Life Ins. Co.</u>, 120 F. Supp. 3d 1328, 1346 (M.D. Fla. 2015) (quoting <u>Wadlington v. Cont'l Med. Servs., Inc.</u>, 907 So. 2d 631, 632 (Fla. 4th DCA 2005)).   For the reasons discussed above, the undisputed evidence establishes that Fitzgerald entered into a valid contract—the Lease Agreement—with Defendant MBFS, and had no communications with ICU which would support a claim of fraud. None of Fitzgerald's evidence permits any reasonable inference that either Defendant made any false statement or omission at all, let alone with the intent of inducing Fitzgerald's reliance.   Nor does Fitzgerald present any evidence suggesting that she relied on (or was damaged by) any such statement or omission.   Fitzgerald has therefore failed to create a genuine issue of material fact for trial as to her claims for fraud in Count I, and Defendants are entitled to summary judgment.

---

[15] Where, as here, the Court exercises supplemental jurisdiction over state-law claims, "state law governs substantive issues and federal law governs procedural issues."   <u>McDowell v. Brown</u>, 392 F.3d 1283, 1294 (11th Cir. 2004) (citation omitted); <u>see also</u> <u>Madura v. BAC Home Loans Servicing, LP</u>, 593 F. App'x 834, 844 (11th Cir. 2014) (same); <u>Osborne v. Am. Multi Cinema, Inc.</u>, 348 F. App'x 535, 538 (11th Cir. 2009) (same).

## 2. **Fair Debt Collection Practices Act**

In Count II, Fitzgerald brings a claim against MBFS and ICU for violating the FDCPA.   In order to prevail on an FDCPA claim against either Defendant, Fitzgerald must show that: (1) she was the object of collection activity arising from consumer debt; (2) the Defendant is a debt collector as defined by the FDCPA; and (3) the Defendant has engaged in an act or omission prohibited by the FDCPA.   See, e.g., McCorriston v. L.W.T., Inc., 536 F. Supp. 2d 1268, 1273 (M.D. Fla. 2008); Fuller v. Becker & Poliakoff, P.A., 192 F. Supp. 2d 1361, 1366 (M.D. Fla. 2002).   As Defendants correctly point out, the FDCPA's definition of "debt collector" specifically excludes "any person collecting or attempting to collect any debt . . . to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person."   See 15 U.S.C. § 1692a(6)(F).   Accordingly, "a loan servicing company that becomes the servicer before the loan at issue was in default is not a 'debt collector' under the FDCPA."   See Mathieson v. Wells Fargo Bank, NA, 524 F. Supp. 3d 1246, 1259 (M.D. Fla. 2021) (citing Fenello v. Bank of Am., NA, 577 F. App'x 899, 902 (11th Cir. 2014)).   Because the Lease Agreement establishes that MBFS acquired the right to enforce the Lease Agreement before Fitzgerald defaulted on her obligations under it, MBFS is not a "debt collector" subject to the FDCPA.   And Fitzgerald's only argument that ICU violated the FDCPA is that ICU "had no 'present right of possession'" when it

seized the SUV.[16]   See Amended Complaint ¶ 49 (quoting 15 U.S.C. § 1692f(6)).

But under state law and the terms of the Lease Agreement that Fitzgerald

signed, ICU did have a present right to possess the SUV on MBFS's behalf.

See Lease Agreement at 9 (reflecting that the terms of the Lease Agreement

permitted MBFS to "take possession of the vehicle without prior demand, unless

notice or demand is required by law"); Fitzgerald's Deposition at 35 (reflecting

Fitzgerald's agreement with the statement that MBFS "sent Fitzgerald the

notice of default" before repossessing the vehicle); see also Fla. Stat. § 679.609

(permitting a secured party to repossess collateral "[w]ithout judicial process[ ]

if it proceeds without breach of the peace").[17]   As a result, Defendants are

entitled to summary judgment on Fitzgerald's FDCPA claims in Count II.

### 3. Equal Credit Opportunity Act

In Count III, Fitzgerald alleges that MBFS violated the ECOA because it

"discriminated against [her] because of [her] race, color and good faith exercise

of [her] rights under the Consumer Credit Protection Act."   See Amended

---

[16] The Court is not persuaded by Defendants' conclusory argument, without supporting authority, that ICU cannot be a debt collector under the FDCPA if it "is merely a repossession company and not in the business of collecting debt."   See Defendants' Motion at 9–10.   But the Court need not reach this issue because even assuming that ICU is a debt collector, Fitzgerald has not shown that it took any action prohibited by the FDCPA.

[17] In analyzing whether a repossession agency has violated § 1692f(6) of the FDCPA, courts "look to the applicable state self-help repossession statute which identifies the circumstances under which an enforcer of a security interest does not have a present right to the collateral at issue."   Wright v. Santander Consumer USA, Inc., No. 6:18-cv-263-Orl-22KRS, 2018 WL 2095171, at *4 (M.D. Fla. May 1, 2018).   Fitzgerald does not argue that ICU breached the peace in repossessing the SUV, nor does the record support an inference that it did.

Complaint ¶ 52.  To prevail on a claim that MBFS discriminated against her in violation of the ECOA, Fitzgerald "must show that: (1) [s]he exercised in good faith (2) a right under the Consumer Credit Protection Act, and (3) as a result, [MBFS] discriminated against [her] with respect to the credit transaction." See Bowen v. First Fam. Fin'l Servs., Inc., 233 F.3d 1331, 1335 (11th Cir. 2000); 15 U.S.C. § 1691(a)(3).  MBFS contends that Fitzgerald cannot prevail on this claim because she has not alleged any facts or presented any evidence to show that she was an applicant for credit with MBFS, that MBFS denied her credit, or that she was treated differently from any similarly situated individual, and because Fitzgerald concedes that both parties performed under the Lease Agreement until she defaulted.  See Defendants' Motion at 11.  In response, Fitzgerald argues that "MBFS violated [the] Equal Credit Opportunity Act by refusing to allow [her] credit as requested to resolve the alleged balance owed prior to unlawful repossession."[18]  See Fitzgerald's Response at 7.  But she does not argue or present any evidence that MBFS treated her differently from other lessees in default, nor does she provide any evidence permitting even an

---

[18] This statement appears to refer to Fitzgerald's contention that she "offered to extend credit to Defendant MBFS to pay off the remaining balance using her social security credit card."  See Fitzgerald's Reply at 5.  As noted above, this contention reflects meritless sovereign citizen beliefs and need not be discussed further.  And while Fitzgerald attaches certain demand letters she sent to MBFS, these letters undermine her characterization that she requested "credit" to "resolve the alleged balance."  See, e.g., Doc. 81-1 at 5 (in a letter from Fitzgerald dated July 13, 2022, demanding that MBFS "[p]ay civil penalties of $25,000," "[r]efund all payments," and "[c]lose [her] account").

inference that MBFS took any discriminatory action.   Fitzgerald has simply failed to raise an issue of fact as to whether MBFS discriminated against her as to any credit transaction.   Accordingly, MBFS is entitled to summary judgment on Fitzgerald's claim in Count III.

### 4. Truth in Lending Act

In Count IV, Fitzgerald asserts that MBFS violated TILA because it "failed to provide full disclosure that the lease was a Consumer Credit Sale" and "required a $500 down payment," and because MBFS "never disclosed the annual percentage rating [sic]." See Amended Complaint ¶¶ 62–63.   MBFS argues that it is entitled to summary judgment as to this claim because all terms of the transaction are fully disclosed on the face of the Lease Agreement. See Defendants' Motion at 12.   The record supports MBFS's contention, and Fitzgerald points to no evidence supporting even an inference that the Lease Agreement failed to fully describe the nature of the transaction.   Indeed, the down payment is disclosed on the face of the Lease Agreement.   See Lease Agreement at 2 (a page Fitzgerald initialed, reflecting that $500 was the "Amount to be Paid in Cash" at signing).   And Fitzgerald does not explain how any aspect of the Lease Agreement was subject to an annual percentage interest rate which MBFS failed to disclose.[19]   Fitzgerald has simply failed to create an

---

[19] In Fitzgerald's Motion, she cites the MBFS prospectus in asserting that MBFS "did not disclose the APR."   See Fitzgerald's Motion at 4.   But as discussed above, Fitzgerald does

issue of fact for trial as to this claim, and MBFS is therefore entitled to summary judgment in its favor on Count IV.[20]

### 5. Trespass and Conversion

Fitzgerald's claims for trespass and conversion in Counts V and VI, respectively, each fail for the same reason: ICU (as MBFS's agent) lawfully repossessed the SUV under the Lease Agreement.   Under Florida law, a secured party may repossess collateral without judicial process if it proceeds without a breach of the peace.   Fla. Stat. § 679.609.   As noted above, Fitzgerald does not contend that ICU breached the peace in repossessing the SUV.   To the contrary, she testified in her deposition that the SUV was parked "in the front of [her] house" when it was repossessed, and she does not "know what happened during the repossession."   See Fitzgerald's Deposition at 29. Accordingly, ICU is entitled to summary judgment on Fitzgerald's claims for trespass and conversion in Counts V and VI.   See Marine Midland Bank-Cent. v. Cote, 351 So. 2d 750, 752 (Fla. 1st DCA 1977) (holding that a lawful repossession of a vehicle from a debtor's unenclosed carport "is not trespass");

---

not explain why this 2016 prospectus has anything to do with her 2020 Lease Agreement, nor has she responded to the evidence that her Lease Agreement was not part of any such transaction.

[20] In Fitzgerald's Motion, she asserts that MBFS violated TILA because it "misrepresented itself as owner instead of Servicer in all documents in response to this matter."   See Fitzgerald's Motion at 3.   To the extent Fitzgerald's Amended Complaint could be read to encompass such a theory, the Lease Agreement plainly discloses MBFS's role as a servicer.   See Fitzgerald's Deposition at 68 (designating MBFS "as the servicing agent for Daimler Trust" with power to enforce the terms of the lease).

<u>Utah Power Sys., LLC v. Big Dog II, LLC</u>, 352 So. 3d 504, 508 (Fla. 1st DCA 2022) (explaining that conversion requires a plaintiff to show "a 'wrongful exercise or assumption of authority'" over the property (quoting <u>Star Fruit Co. v. Eagle Lake Growers</u>, 33 So. 2d 858, 860 (1948))).

### 6. Unjust Enrichment

Finally, Fitzgerald's claim for unjust enrichment fails because the Lease Agreement authorized the repossession.  <u>See</u> Fitzgerald's Deposition at 68. Under Florida law, "a plaintiff cannot pursue a quasi-contract claim for unjust enrichment if an express contract exists concerning the same subject matter." <u>Diamond "S" Dev. Corp. v. Mercantile Bank</u>, 989 So. 2d 696, 697 (Fla. 1st DCA 2008).  Because the Lease Agreement covers Fitzgerald's default and MBFS's repossession of the SUV, MBFS is entitled to summary judgment as to Fitzgerald's claim for unjust enrichment in Count VII.

### C. MBFS's Counterclaim

Having determined that Defendants are entitled to summary judgment on each of Fitzgerald's claims, the Court turns to MBFS's Counterclaim against Fitzgerald for breach of contract.   MBFS seeks summary judgment in its favor as to Fitzgerald's liability for breaching the Lease Agreement and MBFS's entitlement to damages in the amount of $8,279.09, plus "pre-judgment interest, post-judgment interest, recoverable costs, and reasonable attorney's fees allowed by law."  <u>See</u> Defendants' Motion at 20.

As an initial matter, the Court notes that MBFS bears the burden of proof as to its Counterclaim.   Significantly, in order to be entitled to summary judgment for issues on which the movant bears the burden of proof, "that party must show <u>affirmatively</u> the absence of a genuine issue of material fact: it must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial."   <u>See</u> <u>Fitzpatrick v. City of Atlanta</u>, 2 F.3d 1112, 1115 (11th Cir. 1993) (quoting <u>United States v. Four Parcels of Real Prop.</u>, 941 F.2d 1428, 1437 (11th Cir. 1991)).   Thus, even where a party opposing summary judgment has not presented any evidence in opposition to a motion for summary judgment, the Court still must first determine whether the moving party has satisfied the initial burden of presenting credible evidence on the relevant issue.   Here, that means the Court must determine whether MBFS has presented sufficient evidence as to each element of its breach-of-contract claim.

Under Florida law, "[t]he elements of a breach of contract action are (1) a valid contract; (2) a material breach; and (3) damages."   <u>Beck v. Lazard Freres & Co., LLC</u>, 175 F.3d 913, 914 (11th Cir. 1999).   A valid contract "is generally composed of four basic elements: offer, acceptance, consideration, and sufficient specification of essential terms."   <u>Rauch, Weaver, Norfleet, Kurtz & Co. v. AJP Pine Island Warehouses, Inc.</u>, 313 So. 3d 625, 630 (Fla. 4th DCA 2021).   As discussed above, MBFS has provided undisputed evidence that Fitzgerald

entered into a valid contract, the Lease Agreement, with Mercedes-Benz of Orange Park.   Indeed, in her deposition Fitzgerald acknowledged that she agreed to make monthly payments in exchange for possession of the SUV.   <u>See</u> Fitzgerald's Deposition at 35–36 (stating that she signed and initialed the Lease Agreement, and that she "did agree to the terms of the lease" at the time of signing).   And while Fitzgerald asserts that she—not MBFS—is entitled to summary judgment on this claim because "[t]here was no consideration given" for the Lease Agreement, <u>see</u> Fitzgerald's Motion at 4, the Court does not credit this unsupported legal conclusion which is plainly contradicted by the record.[21] Accordingly, there is no genuine dispute of material fact as to the validity of the Lease Agreement.

MBFS has also provided uncontested evidence that Fitzgerald breached the Lease Agreement.   Under the terms of the Lease Agreement, Fitzgerald was obligated to make timely monthly payments to avoid default.   <u>See</u> Lease Agreement at 8.   But Fitzgerald defaulted, and she failed to cure the default after MBFS sent multiple letters requesting payment.   Fitzgerald was

---

[21] Fitzgerald also contends that "MBFS sold the alleged debt to a third party company for collection."   <u>See</u> Fitzgerald's Motion at 4.   While she attaches two letters she received from a debt collector regarding her account with MBFS, these letters do not suggest that it <u>purchased</u> the debt from MBFS.   Rather, they reflect that the debt collector was attempting to collect the debt on MBFS's behalf.   <u>See</u> Doc. 81-1 at 13–14 (stating that the debt collector was "trying to collect a debt that you owe" to MBFS, and referring to MBFS as the "creditor").   Accordingly, the record is devoid of any evidence supporting Fitzgerald's contention that MBFS "sold the alleged debt."

therefore obligated to pay MBFS the Early Termination Liability.  See id. The Early Termination Liability consists of "all expenses related to recovering" and selling the SUV, plus all unpaid monthly payments as of the date of termination, all other unpaid amounts due under the lease, any official fees and taxes, a vehicle turn-in fee, "[a]ny positive amount determined by subtracting the vehicle's then Fair Market Wholesale Value from the Adjusted Lease Balance," an early termination fee of 3.15% of the remaining monthly payments.[22]  See id.  Despite MBFS's requests for payment, Fitzgerald refused to pay the amount due.  See Fitzgerald's Deposition at 28. Accordingly, MBFS has presented unrebutted evidence establishing that Fitzgerald breached the terms of the Lease Agreement and caused MBFS to suffer damages.

As to the amount of damages, MBFS relies on the declaration of Todd McClurg, who is "one of MBFS's qualified witnesses of business records."  See Declaration in Support of Defendants' Joint Motion for Summary Judgment (Doc. 77-1; McClurg Declaration) at 1.[23]  In this document, McClurg attests

---

[22] The Lease Agreement includes different calculations for standard leases and single-payment leases.  Fitzgerald's Lease Agreement was a standard lease.  See Fitzgerald's Deposition at 60, 67.  The 3.15% rate applies because the term of Fitzgerald's lease was 48 months.  See id.

[23] Defendants originally attached an unsigned declaration of Jean D. Coleman to their motion.  See Declaration in Support of Defendants' Joint Motion for Summary Judgment (Doc. 75-1; Coleman Declaration) at 2.  Because this document was unsigned, Defendants filed the McClurg declaration three days later.  See Defendants' Notice of Filing Corrected Declaration in Support of Defendants' Joint Motion for Summary Judgment (as to Signature Only) (Doc. 77), filed January 22, 2024.  The Court does not rely on the Coleman Declaration.

that he is "familiar with [Fitzgerald's] account" and declares that her account balance is $8,279.09.  <u>See id.</u>  While Fitzgerald disputes that the Lease Agreement permits MBFS to prevail on its breach-of-contract claim, she does not challenge McClurg's calculation of damages under the Lease Agreement.

MBFS also seeks recovery of pre-judgment interest.  <u>See</u> Defendants' Motion at 20.  Entitlement to "pre-judgment interest is governed by state law" when a federal court adjudicates a state-law claim, and Florida law allows litigants to recover pre-judgment interest at the contractually specified rate for breach-of-contract claims.  <u>See</u> <u>Walker v. Life Ins. Co. of N. Am.</u>, 59 F.4th 1176, 1192 (11th Cir. 2023);[24] <u>Republic Servs., Inc. v. Calabrese</u>, 939 So. 2d 225, 226 (Fla. 5th DCA 2006) (under Florida law, determining that the contractual interest rate was the correct measure of pre-judgment interest).  Pursuant to the terms of the Lease Agreement, MBFS is entitled to the payment of 6% annual interest on all unpaid amounts after it terminated the lease and demanded payment.  <u>See</u> Lease Agreement at 9.  The Court determines that this interest began to accrue on July 11, 2022—the date by which MBFS demanded that Fitzgerald cure her default—and continued to accrue through the date of the judgment.[25]  <u>See</u> Fitzgerald's Deposition at 78 (demand letter

---

[24] "[F]ederal courts have generally acknowledged the principles established in <u>Erie</u> as applying to claims in federal court based on pendent and ancillary jurisdiction."  <u>Vacation Break U.S.A., Inc. v. Mktg. Response Grp. & Laser Co.</u>, 189 F.R.D. 474, 478 (M.D. Fla. 1999) (collecting cases).

[25] The contractual interest rate does not govern the rate of post-judgment interest.

providing the deadline of July 11, 2022); see also Dade Cnty. v. Am. Re-Ins. Co., 467 So. 2d 414, 419 (Fla. 3d DCA 1985) (stating that in a breach-of-contract action "it is proper to allow interest at the legal rate from the date the debt was due").   Accordingly, the undisputed evidence in the record establishes that MBFS is entitled to damages in the amount of $8,279.09, plus pre-judgment interest in the amount of $994.85.[26]   Because MBFS has met its initial burden of showing that there is no dispute of material fact as to any element of its Counterclaim, and Fitzgerald has failed to create a genuine issue of fact for trial, summary judgment is due to be granted in favor of MBFS on its Counterclaim for breach of contract.

## VI.   Conclusion

Construing all facts and drawing all reasonable inferences in the light most favorable to Fitzgerald, Defendants have shown that there is no issue of fact for trial as to any of Fitzgerald's claims in the Amended Complaint, and

---

See Walker, 59 F.4th at 1194 (explaining that the applicable rate for post-judgment interest is controlled by federal law).

[26] The Court will retain jurisdiction to consider any appropriate motion for attorney's fees.   See Sequoia Fin'l Sols., Inc. v. Warren, 660 F. App'x 725, 728 (11th Cir. 2016) ("In Florida, attorneys' fees authorized pursuant to a contract 'may be presented for the first time after final judgment pursuant to a motion for attorney's fees' and are not subject to a jury trial." (quoting Cheek v. McGowan Elec. Supply Co., 511 So. 2d 977, 979 (Fla. 1987))). Pursuant to the Local Rules of the United States District Court for the Middle District of Florida (Local Rules(s)), a "party claiming post-judgment attorney's fees" must request a determination of entitlement to such fees "[w]ithin fourteen days after entry of judgment . . . in a motion that" states the basis for the award, "states the amount sought or provides a fair estimate of the amount sought," and includes a memorandum of law.   See Local Rule 7.01 (emphasis added).

Fitzgerald has failed to create a genuine issue of material fact sufficient to forestall summary judgment on any of her claims.   Accordingly, each Defendant is entitled to summary judgment as to the claims Fitzgerald raises against that Defendant.   MBFS also has presented sufficient evidence to establish each element of its claim for breach of contract, and Fitzgerald has failed to rebut this evidence.   MBFS is therefore entitled to summary judgment in its favor as to its Counterclaim.   For these reasons, Defendants' Motion is due to be granted and Fitzgerald's Motion is due to be denied.

Accordingly, it is

**ORDERED:**

1.   Plaintiff's Motion for Summary Judgment (Doc. 78) is **DENIED**.

2.   Defendants' Joint Motion for Summary Judgment and Accompanying Memorandum of Law (Doc. 75) is **GRANTED** as set forth below:

   A.   The Clerk of the Court is **directed** to enter judgment in favor of Defendant MBFS and against Plaintiff as to Counts I, II, III, IV, and VII of the Amended Complaint (Doc. 4).

   B.   The Clerk of the Court is **directed** to enter judgment in favor of Defendant ICU and against Plaintiff as to Counts I, II, V, and VI of the Amended Complaint.

C.     The Clerk of the Court is further **directed** to enter judgment in favor of MBFS and against Plaintiff as to MBFS's Counterclaim (Doc. 7) in the following amounts:  $8,279.09 in principal, $994.85 in pre-judgment interest as of July 11, 2024.  Post-judgment interest will accrue at the statutory rate set forth in 28 U.S.C. § 1961.

D.     With respect to MBFS's request for attorney's fees and costs, the motion is **DENIED without prejudice** to MBFS filing an appropriate motion in accordance with Local Rule 7.01, Local Rules of the United States District Court for the Middle District of Florida.

3.     The Clerk of the Court is further directed to terminate all pending motions and close the file.

**DONE AND ORDERED** in Jacksonville, Florida on July 11, 2024.

**MARCIA MORALES HOWARD**
United States District Judge

lc31

Copies to:

Counsel of Record

Pro Se Parties